[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action asking that a marriage be dissolved. All jurisdictional requirements for its maintenance have been met.
The parties intermarried at East Rockaway, New York on October 18, 1980. There are two children issue of the marriage, Nicole, born August 25, 1985 and Joseph, born March 7, 1990.
The marriage has broken down irretrievably with no hope of reconciliation. It is dissolved.
The plaintiff testified that the reason for the breakdown was that the defendant swore and called her filthy names, that he hit her several times, that he committed adultery with other women, that she did not love him any more and that she wanted a divorce.
The defendant testified that the breakdown was caused by the fact that they were two highly emotional people, that since the defendant had a miscarriage in December 1986 he felt bad about what was said about him and that when the papers were filed it hit him.
The marriage was a fragile one and was in trouble almost from the beginning. About six months after the marriage the defendant came home when she was preparing dinner, got into a verbal and physical encounter with her and left. Later that same year he came home late and said he had been working. The plaintiff had been CT Page 4002 checking his whereabouts on the phone by calling him at various places, called him a liar. He struck her in the eye, bruising it and left.
Both the above incidents had occurred in New York where they were living. In December 1981 they bought a house in Milford, Connecticut, and moved into it in early 1982.
About five years later the plaintiff suspected that the defendant was having an affair because he constantly stayed out at night. In October 1989 the defendant moved out of the bedroom the parties slept in and started sleeping in a Castro convertible in the living room.
This divorce was started and filed in court on June 22, 1990. The defendant continued to live at the family residence until October 27, 1990 when a fight ensued between them, the police were called. The defendant moved out of the house that night to a motel, then to a friend's house in New Haven, to a condo in North Branford and finally to another condo in East Haven. He was living there with a lady friend when, by an artifice, the plaintiff obtained a key to the place and when the defendant had gone to New York, entered it and found the evidence of the lady's presence. The plaintiff told him what she found, accused him of an affair with the lady. The defendant then said "she was not the first", that there were others, that he was having an affair and there was nothing she could do about it, and that she could not prove it. It is a fair inference from all of this that the plaintiff's suspicions about him in 1987 were valid and that he was having affairs then.
It is perfectly clear that the defendant's actions were the sole cause of the breakdown of the marriage. The court notes that aside from the defendant's charge that both he and she were highly emotional people, he did not detail anything specifically that she did as a claim for the breakdown of the marriage.
The plaintiff shall have sole custody of the two children with liberal rights of visitation in the defendant. Such rights shall include every other weekend overnight, a sharing of holidays, one week in the summer and one week in winter to coincide with vacation time of the defendant plus any other time that the parties can agree on.
The defendant shall pay to the plaintiff support for the children in the amount of $100 per week per child.
The defendant shall continue to provide the health insurance for the children that he presently has or its equivalent. All uninsured unreimbursed medical, dental and prescription charges for CT Page 4003 the children shall be shared equally by the parties. The plaintiff may receive COBRA benefits to the plaintiff's health insurance for the specified time at her own expense.
The defendant shall maintain insurance on his life in the amount of $200,000 and designate the children as beneficiaries, for so long as he is obligated to pay child support.
The plaintiff shall have the benefit of the dependency exemption of the children for federal and state tax purposes.
The defendant shall quitclaim to the plaintiff all right, title and interest he has in the family homestead at 400 Welch's Point Road in Milford. The plaintiff shall take said property subject to the first mortgage only. The plaintiff shall hold the defendant harmless on the first mortgage only. The defendant shall bring the first mortgage current forthwith.
The contents of said family homestead shall be the property of the plaintiff and the defendant shall relinquish any claim to them except for any of his clothing which remains there. The contents of the defendant's condominium shall be the property of the defendant and the plaintiff shall relinquish any claim to any of the items therein.
The 1986 Mercury which the plaintiff drives will be solely her property and she will be responsible to her mother for the monies her mother paid in conclusion of the loan that the defendant owed on this car.
The plaintiff shall relinquish any claim to the 1992 Oldsmobile which the defendant drives.
The 1975 Chevy van shall be the property of the defendant and he shall remove it from the family homestead within 30 days from the date of this Memorandum of Decision.
The 21 foot Lyman boat shall be the property of the defendant and he shall remove it from the family homestead within 30 days from the date of this Memorandum of Decision.
The IDS Career Retirement Plan shown on the defendant's Financial Affidavit shall be the property of the defendant and the plaintiff shall relinquish any claim to it.
The plaintiff shall relinquish any claim to the defendant's business known as 105 Financial Services, Inc. of 763 Campbell Avenue, West Haven, and the defendant's accounting and tax service businesses located therein. The business office furniture located therein shall be the property of the defendant. CT Page 4004
The defendant shall pay to the plaintiff the sum of one dollar ($1.00) per year as alimony until the first happening of one of the following events:
a. Death of either party.
b. Marriage of the plaintiff.
 c. Cohabitation of the plaintiff as specified in the Connecticut General Statutes.
 d. The passage of five (5) years from the date of this Memorandum of Decision.
The defendant shall be responsible for all utilities at the family homestead to the date of this Memorandum of Decision. Thereafter, the plaintiff will put the utilities in her name and be responsible for the bills thereafter.
The defendant will be responsible for all the liabilities listed on his Financial Affidavit dated March 9, 1992 and hold the plaintiff harmless therefor. Also, the defendant will immediately obtain a release of the lien of Santa Fuel on the family homestead by paying bills of any kinds arising out of and caused by said lien plus the legal expenses to enforce the lien.
The defendant shall pay the following bills:
a. Adolescent Medicine.
b. City of Milford car taxes.
c. Car insurance.
d. Dr. Mongillo's, dentist for the plaintiff.
The plaintiff shall relinquish any claim to any sums received by the defendant arising out of a motor vehicle accident in September 1991.
Each party shall pay the fees of their own attorneys.
THOMAS J. O'SULLIVAN TRIAL REFEREE CT Page 4005